UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

_____

AMERICAN NURSES ASSOCIATION, et al.,     )
                                         )
          Plaintiffs,                    )
                                         )
     v.                                  )     Civ. Action No. 06-1087 (HHK)
                                         )
MICHAEL O. LEAVITT, et al.,              )
                                         )
          Defendants.                    )
_____)

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss.

For the reasons in support of this opposition, Plaintiffs refer the Court to the attached

memorandum of points and authorities.  Plaintiffs request that a hearing be set regarding

this matter.  A proposed order is also attached.

Respectfully submitted,

/s/
_____
Alice L. Bodley
General Counsel
D.C. Bar #939009

Jocelyn Winston
D.C. Bar #434639
Matthew Seiler
D.C. Bar #490767
Catherine Hodgetts
American Nurses Association
8515 Georgia Avenue  Suite 400
Silver Spring, MD 20910
301-628-5127

i

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

_____

AMERICAN NURSES ASSOCIATION, <u>et al.</u>,   )
 )
    Plaintiffs,   )
 )
    v.   )   Civ. Action No. 06-1087 (HHK)
 )
MICHAEL O. LEAVITT, <u>et al.</u>,   )
 )
    Defendants.   )
_____ )

## <u>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Alice L. Bodley          American Nurses Association
General Counsel        8525 Georgia Avenue, Suite 400
D.C. Bar #939009      Silver Spring, MD 20910
                    301-628-5127

Jocelyn Winston        Attorneys for Plaintiffs
Senior Counsel
D.C. Bar #434639

Matthew Seiler
Staff Counsel
D.C. Bar #490767

Catherine Hodgetts
Staff Counsel

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………...1

ARGUMENT……………………………………………………………………...3

I.    DEFENDANTS ERRONEOUSLY CONTEND THAT PLAINTIFFS MUST ALLEGE THE SUPERIORITY OF THE STATE SURVEY TECHNIQUES……………………………………………………………..3

II.   PLAINTIFFS MEET THE REQUIREMENTS TO ESTABLISH ASSOCIATIONAL STANDING FOR THIS LAWSUIT……………………………………………5

    a.  Plaintiffs' Member Nurses Have Standing to Sue in Their Own Right……………………………………………...................6

        i.  Plaintiffs' Members Have Suffered a Concrete and Particularized Injury-in-fact…………………………………………………………...6

        ii.  Plaintiffs' Members' Injury is Fairly Traceable to the Secretary's Inaction………………………………………………………..10

        iii.  A Favorable Decision from the Court Will Likely Redress the Injury to Plaintiffs…………………………………………………………13

    b.  Plaintiffs Seek to Protect an Interest Germane to Their Purpose……………...14

    c.  Plaintiffs' Suit Does Not Require the Participation of Individual Members……………………………………………………15

III.  PLAINTIFFS' CLAIMS ARE REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT……………………………………………………………16

    a.  The Registered Nurse Staffing Standard was Promulgated Under 42 U.S.C. §1395x(e)(9) Prompting a Requirement for JCAHO Standards to be Equivalent………………………………………………………………..17

        i.  Regulatory History Reveals the (e)(9) Foundation for the Registered Nurse Staffing Requirement……………….…………………………………18

        ii.  The Requirements of 42 C.F.R. § 482.23 Far Exceed the Statutory Requirement for Which JCAHO Accreditation Is Automatically Deemed Sufficient…………………………………………………………22

        iii.  The JCAHO Standards are Lower than Those Set by the Secretary……………………………………………..24

b.  The Enforcement of the (e)(9) Health and Safety Nurse Staffing Regulation is Mandatory, Non-delegable and Not Committed to Agency Discretion by Law…………………………………………………………………………27

  i.  The Statute Provides Substantive Guidelines for the Secretary to Apply…………………………………………………………………………28

  ii.  Defendants May Not Delegate Enforcement……………………………29

  iii.  "Agency Discretion" Does Not Permit Abdication of Responsibility………………………………………………………………31

  iv.  The Survey Options do Not Deprive This Court of Jurisdiction…………………………………………………………32

IV.  THE ENFORCEMENT SCHEME DOES NOT PRECLUDE A PRIVATE CAUSE OF ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT…………………………………………………………………………..34

V.  PLAINTIFFS' CHALLENGES TO THE SECRETARY'S ENFORCEMENT HAVE MERIT AND SHOULD BE ADJUDICATED AFTER DISCOVERY AT TRIAL…………………………………………………………………………..37

CONCLUSION…………………………………………………………………………..39

Exhibit A: In the Matter of Grievance Arbitration between Sacred Heart Medical Center and Washington State Nurses Association (Arbitrator Levak, May 28, 2006).

Exhibit B: Cheryl A. Niespodziani, *The CMS-JCAHO Crosswalk: A Side-by-Side Analysis of the CMS Conditions of Participation and JCAHO Standards* (HCPro, Inc. 2006).

Exhibit C: New York State Nurses Association, *The Nursing Shortage in New York City Public Hospitals: How is it Affecting Patients?,* October 18, 2005.

Exhibit D: Linda H. Aiken et al., *Hospital Nurse Staffing and Patient Mortality, Nurse Burnout, and Job Dissatisfaction,* 288 JAMA 16, 1987-93 (2002).

## TABLE OF AUTHORITIES

**CASES**

*ACLU Found. of S. California v. Barr,* 952 F.2d 457 (D.C. Cir. 1991)…………………………38

*Allen v. Wright et al.,* 468 U.S. 737 (1984)………………………………………………………….5

*Am. Chiropractic Ass'n, Inc. v. Leavitt,* 431 F.3d 812 (2005)…………………………………...10

*Arizonans for Official English v. Arizona et al.,* 520 U.S. 43 (1997)……………………………..6

*Bartholet v. Reishauer A.G.,* 953 F.2d 1073 (7th Cir. 1992)……………………………………..38

*Block v. Cmty. Nutrition Inst.,* 467 U.S. 340 (1984)………………………………………………34

*Bowen v. Michigan Acad. of Family Physicians et al.,* 476 U.S. 667 (1986)……………………35

*Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388 (1987)…………………………………………………10

*Conley v. Gibson,* 355 U.S. 41 (1957)……………………………………………………………...37

*Dioguardi v. Durning,* 139 F.2d 774 (2d Cir. 1944)………………………………………………38

*Dunlop v. Bachowski,* 421 U.S. 560 (1975)……………………………………………………….28

*Friends of the Earth, Inc. et al. v. Laidlaw Envtl. Serv. (TOC), Inc.,* 528 U.S. 167 (2000)………6

*Gibson v. City of Chicago,* 910 F.2d 1510 (7th Cir. 1990)………………………………………..37

*Heckler v. Chaney,* 470 U.S. 821 (1985)…………………………………………………………...28

*Heckler v. Ringer,* 466 U.S. 602 (1984)…………………………………………………………...35

*Hishon v. King & Spalding,* 467 U.S. 69 (1984)…………………………………………………...37

*Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333 (1977)……………………...5, 15

*Linda R.C. v. Richard D. et al.,* 410 U.S. 614 (1973)……………………………………………12

*Lujan v. Defenders of Wildlife et al.,* 504 U. S. 555 (1992)………………………………………6

*Moore v. Bd. of Educ. of Chicago,* 300 F Supp. 2d 641 (N.D. Ill. 2004)………………………..37

*Nat'l Ass'n of Regulatory Utility Comm'r  v. Fed. Communications Comm'n,* 737 F.2d 1095
    (D.C. Cir. 1984)………………………………………………………………………………...30

*Nat'l Athletic Trainers' Ass'n, Inc.  v. U. S. Dep't of Health and Human Serv., et al.,* 394
        F.Supp.2d 883 (N.D. Tex. 2005)…………………………………………………………………35

*Nat'l Motor Freight Traffic Ass'n, Inc. et al. v. U.S. et al.,* 372 U.S. 246 (1963)………………...5

*Nat'l Park and Conservation Ass'n v. Stanton,* 54 F.Supp.2d 7 (D.D.C. 1999)……………...30, 31

*Neitzke v. Williams,* 490 U.S. 319 (1989)……………………………………………………...38

*Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55 (2004)…………………………………...17

*Pfizer, Inc. v. Heckler,* 735 F.2d 1502 (D.C. Cir. 1984)……………………………………24

*Raila v. U. S.,* 355 F.3d 118 (2d Cir. 2004)…………………………………………………...37

*Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1 (1ˢᵗ Cir. 1987)…………………………………37

*Scheuer v. Rhodes,* 416 U.S. 232 (1974)……………………………………………………...38

*Sec. Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63 (2d Cir. 2000)……………37

*Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1 (2000)………………………35

*Shook et al. v. D.C. Fin. Responsibility and Management Assistance Auth.,*
        132 F.3d 775 (D.C. Cir. 1998)…………………………………………………………30

*Sierra Club v. Morton,* 405 U. S. 727 (1972)…………………………………………………..7

*Sierra Club v. Sigler,* 695 F.2d 957 (5ᵗʰ Cir. 1983)…………………………………………...30

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,*
        73 F.3d 1423 (7ᵗʰ Cir. 1996)…………………………………………………………38

*Udall v. Tallman,* 380 U.S. 1 (1965)…………………………………………………………24

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc. ,*
        517 U.S. 544 (1996)…………………………………………………………………16

*U.S. v. Giordano et al.,* 416 U.S. 505 (1974)…………………………………………………30

*U.S. v. Widdowson,* 916 F.2d 587 (10ᵗʰ Cir. 1990)…………………………………………30

*Utahns for Better Transp. v. U. S. Dept. of Transp.,* 295 F.3d 1111 (10ᵗʰ Cir. 2002)……………5

*Warth et al. v. Seldin et al.,* 422 U.S. 490 (1975)……………………………………………5

*Wells v. U. S.,* 851 F.2d 1471 (D.C. Cir 1988)……………………………………………………..38

**FEDERAL STATUTES AND REGULATIONS**

5 U.S.C. § 701 (2006)…………………………………………………………………...16, 28
5 U.S.C. § 706 (2006)…………………………………………………………………………16
5 U.S.C. § 551 (2006)…………………………………………………………………………16
42 U.S.C. § 1395aa (2006)……………………………………………………………………32
42 U.S.C. § 1395bb (2005)……………………………………………………..2, 11, 28, 29, 32
42 U.S.C. § 1395ff (2006)……………………………………………………………………35
42 U.S.C. § 1395hh (2005)……………………………………………………………………11
42 U.S.C. § 1395ii (2006)……………………………………………………………………35
42 U.S.C. § 1395x (2005)………………………………………………………………...passim


42 C.F.R. § 405.801 (2006)…………………………………………………………………34, 36
42 C.F.R. § 482.23 (2006)……………………………………………………………..passim
42 C.F.R. § 488.5 (2006)…………………………………………………………………...23
42 C.F.R. § 488.10 (2006)…………………………………………………………… ………11

Federal Health Insurance for the Aged, 31 Fed. Reg. 13,424 (Oct. 18, 1966), Attachment #1….18

Medicare and Medicaid Programs; Hospital Conditions of Participation; Provider Agreements
and Supplier Approval, 62 Fed. Reg. 66,727 (Dec. 19, 1997)………..…………………………..20

Medicare and Medicaid Programs; Conditions of Participation for Hospitals, 51 Fed. Reg.
22,018 (June 17, 1986)………………………………………………………………………...20

Medicare and Medicaid Programs; Conditions of Participation for Hospitals, 48 Fed. Reg. 299
(Jan. 4, 1983)………………………………………………………………………………..21


**OTHER AUTHORITIES**

JCAHO, *Comprehensive Accreditation Manual for Hospitals:*
    *The Official Handbook* (2006)…………………………………………………………..passim

*Medicare:  CMS Needs Additional Authority to Adequately Oversee Patient Safety in*
    *Hospitals,* GAO-04-850 at 11-12 (2004)…………………………………………………33

U.S. Dep't of Health and Human Serv., CMS Financial Report 126 (2005)…........................4, 31

## INTRODUCTION

Plaintiffs seek declaratory and injunctive relief from this Court to remedy Defendants' violation of specific, mandatory directives in the Social Security Act.  In this case, Plaintiffs contend that the Defendants, through their inaction, have permitted the accreditation of hospitals by the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO) to serve as a basis for hospitals' participation in the Medicare program, even when the JCAHO standards are lower than the requirements, established by the Secretary, in the regulatory Conditions of Participation for Medicare.  The Conditions of Participation require in pertinent part:

> (b) Standard: Staffing and delivery of care.  The nursing service must have adequate numbers of licensed registered nurses, licensed practical (vocational) nurses, and other personnel to provide nursing care to all patients as needed.  There must be supervisory and staff personnel for each department or nursing unit to ensure, when needed, the immediate availability of a registered nurse for bedside care of any patient.

42 C.F.R. § 482.23 (2006).

A "hospital" is defined as an institution which "provides 24-hour nursing service rendered or supervised by a registered professional nurse, and has a licensed practical nurse or registered professional nurse on duty at all times…" 42 U.S.C. § 1395x(e)(5) (2005), except for certain small, rural hospitals for which certain nursing service requirements are waived.  42 U.S.C. § 1395x(e)(5)(A) (2005).  A "hospital" is also defined as an institution which "meets such other requirements as the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services in the institution."  42 U.S.C. § 1395x(e)(9) (2006).  The registered nurse staffing standards quoted above is such a requirement.

1

JCAHO's accreditation is equivalent to approval for participation in the Medicare program, provided that the JCAHO standards are as high as those set by HHS pursuant to 42 U.S.C. § 1395x(e)(9).  *See* 42 U.S.C. § 1395bb(a)(4) (2005).  Plaintiffs contend that the JCAHO standards for registered nurse staffing are not as high as those set by HHS, and therefore, JCAHO accreditation should not be presumed to qualify hospitals for participation in Medicare.  HHS, through its inaction, has permitted hospitals to participate in Medicare without the required enforcement of the Conditions of Participation, resulting in unnecessary risk and injury to patients and registered nurses alike.

JCAHO is a private, non-profit accrediting organization controlled by its sponsors, the American Medical Association, the American Hospital Association, the American College of Physicians-American Society of Internal Medicine, and the American Dental Association.  JCAHO receives its funding through fees paid by hospitals to receive accreditation review and through fees paid by hospitals to JCAHO's consulting arm that assists hospitals in trying to obtain JCAHO accreditation.  Through its benign neglect, HHS is permitting JCAHO, with its vested interest in accrediting hospitals, to avoid application of the mandatory and higher standards that are embodied in the Conditions of Participation.

JCAHO-accredited hospitals are collecting billions of dollars from the Medicare program, and many are not providing the level of registered nurse care that is required by the government and needed by the patients.  The American Nurses Association and its New York and Washington state affiliates seek to have the law enforced through an order to HHS to address hospitals' compliance with HHS regulatory requirements.

**ARGUMENT**

**I.    DEFENDANTS ERRONEOUSLY CONTEND THAT PLAINTIFFS MUST ALLEGE THE SUPERIORITY OF THE STATE SURVEY TECHNIQUES.**

Defendants devote great effort at attempting to divert the Court's attention from the real issue in the case. They correctly identify the statutory mechanisms for determining compliance with the Conditions of Participation, but then incorrectly attribute legal impact to those mechanisms. Specifically, they point out that the non-JCAHO accredited hospitals are reviewed by state agency contractors of HHS that conduct "periodic surveys" of the hospitals to determine if they meet the Conditions of Participation. Defendants then argue that in order to establish jurisdiction, the Plaintiffs are required to allege that the non-JCAHO accredited hospitals have better registered nurse staffing than the hospitals that are accredited by JCAHO and that Plaintiffs must claim that this is based upon the superiority of the periodic surveys.[1] (Defs. ['] Mot. to Dismiss at 21, 29.) Defendants tortured analysis begs the question. Plaintiffs need not show that all other aspects of the Medicare program regarding the Conditions of Participation are working well, better or in compliance with law in order to show that the aspects of the program about which Plaintiffs complain are not in compliance with the law.

Defendants compound their erroneous view by also contending that Plaintiffs must claim the inadequacy of the government's "sample based" survey connected to its

---

[1] As noted *infra*, at page 32, the Government Accounting Office has found that the state surveyors identified more compliance problems than JCAHO identified. However, these facts are not a necessary component of Plaintiffs' claim or proof that Defendants have erroneously permitted JCAHO accreditation to support participation in Medicare when one of the JCAHO standards is lower than the HHS standard.

validation program or the "allegation driven" survey connected to review of complaints, both conducted by the state agency surveyors.  Defendants suggest that it is fatal for the Complaint to "draw[] no direct connection…between the complained-of government action – the placement of 'bedside immediacy' enforcement on the sample-based/allegation driven-survey track rather than on the periodic track – and any injuries that plaintiffs allege they are suffering from the alleged understaffing of registered nurses."  (Defs. ['] Mot. to Dismiss at 21.)  This contention presumes that the JCAHO standard is at least equivalent to the HHS standard and that it is acceptable to have the catch-as-catch-can quality review surveys identify the impliedly occasional staffing problem.  This contention also implicitly credits Defendants with making a conscious decision to "place" the "bedside immediacy enforcement" on any of the three specific survey tracks.

The attempted reframing of the case by Defendants misses the point:  Plaintiffs contend that Defendants have done nothing regarding the higher RN staffing standard set forth in the Conditions of Participation.  (Compl. at ¶40, 48.)  Defendant CMS essentially acknowledged its inaction by noting its intention to develop "regulatory changes to implement the statutory requirement to deny deemed status where CMS requirements are higher than the requirements prescribed for accreditation by JCAHO."  U.S. Dep't of Health and Human Services, CMS Financial Report 126 (2005).  HHS and CMS inaction in the face of a statutory exclusion to the scope of JCAHO's accreditation cannot be hidden by multiple references to the ways hospitals are evaluated in other spheres and for other purposes.

## II.    PLAINTIFFS MEET THE REQUIREMENTS TO ESTABLISH ASSOCIATIONAL STANDING FOR THIS LAWSUIT.

Defendants erroneously argue that Plaintiffs do not have standing to bring this

suit.  Defendants rely on several theories: Plaintiffs do not have standing "in their own

right," Plaintiffs can claim no legal relationship with Medicare beneficiaries through

which Plaintiffs may assert their putative rights, Plaintiffs do not have associational

standing.  (Defs. ['] Mot. to Dismiss at 19-31.)  Defendants attempt to skew the issue,

however, by using multiple arguments to allege that Plaintiffs must prove standing "in

their own right" or on behalf of Medicare-beneficiaries *and* associational standing

(*emphasis added*).  It is well-settled law that an association "may have standing solely as

the representative of its members."  *Warth et al. v. Seldin et al.*, 422 U.S. 490, 511

(1975); *See also Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977);

*Nat'l Motor Freight Traffic Ass'n, Inc. et al. v. U.S. et al.*, 372 U.S. 246 (1963); *Utahns*

*for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111 (10th Cir. 2002).  Therefore,

Plaintiffs need only show that they meet the requirements for associational standing.

In doing so, Plaintiffs rely on case law that specifically addresses associational

standing, starting with *Hunt*.  These cases are more applicable to Plaintiffs' case than

*Allen v. Wright et al.,* 468 U.S. 737 (1984) and others on which the Defendants rely and

which do not involve associations.  *See Allen,* 468 U.S. at 739 (involving a challenge by

parents of black public school children of the IRS's failure to deny tax-exempt status to

racially discriminatory private schools).  In *Hunt*, the Supreme Court stated that

an association has standing to sue on behalf of its members if three conditions are met: 1)

the association's members would otherwise have standing to sue in their own right; 2) the

interest the association seeks to protect is germane to the association's purpose; and 3)

neither the claim asserted, nor the relief requested, requires the participation of individual

members in the lawsuit.  432 U.S. at 344.  Plaintiffs American Nurses Association, New

York State Nurses Association and Washington State Nurses Association clearly

establish associational standing because their members have standing to sue in their own

right, they seek to protect an interest germane to their purpose, and their claims do not

require the participation of individual members.

### a.   Plaintiffs' Member Nurses Have Standing to Sue in Their Own Right.

Nurse members of Plaintiff associations establish standing by showing a

concrete and particularized injury-in-fact, a causal connection between this injury and the

Secretary's inaction, and that the injury is likely to be redressed by a favorable decision

from the court.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  *See also*

*Arizonans for Official English v. Arizona et al.,* 520 U.S. 43, 65-66 (1997) (stating that an

association has standing if its members would have standing to sue in their own right);

*Friends of the Earth, Inc. et al. v. Laidlaw Envtl.  Serv. (TOC) Inc.*, 527 U.S. 167, 180-81

(2000).

### i.   Plaintiffs' Members Have Suffered a Concrete and Particularized Injury-in-fact.

Plaintiffs' members are suffering immediate and concrete injury because of the

Secretary's inaction and would establish standing had they themselves sued.  The

Defendants' failure to act has caused the invasion of Plaintiffs' members' "legally

protected interests."  *See id.* at 560 (articulating the standard for showing an injury-in-

fact).  The injury-in-fact test also requires showing that Plaintiffs are within the zone of

interests protected by the law, or that the party seeking review is "himself adversely

affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972).  The purpose of this test is

to "put the decision as to whether review will be sought in the hands of those who have a

direct stake in the outcome."  Plaintiffs' nurse members have a direct stake in whether the

Secretary adequately enforces the Conditions of Participation regarding nurse staffing

and suffer on a daily basis in the workplace from the Secretary's failure to do so.  As

stated in Plaintiffs' Complaint, the Secretary's failure to enforce the Conditions has

placed Plaintiff's members, "in the untenable position of providing health care services in

a manner that does not comport with the high professional standards of the nurses who

work for affected hospitals."  (Pls. ['] Compl. at ¶ 43.)  For example, Plaintiffs' nurse

members, as well as the public, are harmed by a failure to require adequate staffing on

medical/surgical units where registered nurse-to-patient staffing ratios of 1:8 result in

patients being 28% more likely to die within 30 days than those in units with RN to

patient ratios of 1:4, and complications such as urinary tract infections, pneumonia, shock

and gastrointestinal bleeding are much more prevalent.  (Pls. ['] Compl. at ¶ 44); Exhibit

D: Linda H. Aiken et al., *Hospital Nurse Staffing and Patient Mortality, Nurse Burnout,*

*and Job Dissatisfaction,* 288 JAMA 16, 1987-93 (2002).

Plaintiff NYSNA evaluated RN staffing at the JCAHO accredited New York City

Health & Hospitals Corporation.  Exhibit C: New York State Nurses Association, *The*

*Nursing Shortage in New York City Public Hospitals: How is it Affecting Patients?,*

October 18, 2005.  In that report, NYSNA stated that more than 3,700 reports of

assignments that, in the professional judgment of the RNs, put patients at risk and were

made between September 2003 and September 2005.  One report stated for the

Medical/Surgical Unit on January 6, 2004, that there were two RNs on duty for 23

patients.  The NYSNA member wrote, "I've been assigned 12 patients. No head nurse.
Tasks include blood glucose monitoring, dressings, nasogastric tubes, suctioning,
medication administration through both IV and PO, full and safety rounds, assist and
supervise nurses' aides with total care, assist in feeding.  All patients over age 65."  *Id*. at
5.  The Report also notes that on the Medical/Surgical Observational Unit on December
14, 2002, "The assignment was not safe.  I was left alone on the medical/surgical
observation unit with two patient care associates.  At one point, I was told that I was
required to do admission and medication administration on the regular floor.  I reluctantly
complied with the request [leaving no RN in the unit]."  *Id*. at 6.  On the Intensive Care
Unit on March 21, 2005, an RN reported in the context of two RNs (one being a
temporary agency nurse), caring for 12 patients:  "Patient care and safety is being
jeopardized.  Very high risk for medication errors.  Nothing is being done concerning this
critical problem."  *Id*. at 6.

      For further proof of how Plaintiffs' nurse members are injured as a result of the
Secretary's in action, Plaintiffs refer the Court to Exhibit A: In the Matter of Grievance
Arbitration between Sacred Heart Medical Center and Washington State Nurses
Association (Arbitrator Levak, May 28, 2006).  Members of WSNA who work at this
JCAHO accredited facility were found to have often missed breaks because the hospital
"simply failed to provide sufficient RN staff or other support staff to provide block break
relief."  Exhibit A at 4.  The Arbitrator determined that "the overall record demonstrated
that in the vast majority of cases missed breaks related to patient and treatment
responsibilities and staffing deficiencies…"  *Id*. at 13, n.6.[2]

_____

[2] The foregoing information and attachments are presented in support of Plaintiffs' standing by providing to
support for claims of injury.  (Compl. at ¶ 42, 43, 44 and 46.)  Plaintiffs are contemporaneously filing a

Defendants make several attempts, all of which fail, to deny that Plaintiffs'
members are suffering concrete and actual injuries.  Defendants' first allege that
Plaintiffs are "simply borrow[ing] an injury allegedly faced by Medicare beneficiaries" to
establish standing.  (Defs. ['] Mot. to Dismiss at 20-21.)  Plaintiffs need not "borrow"
injuries from anyone, however, as Plaintiffs' nurse members suffer on a daily basis from
arduous working conditions.  *See* Exhibit A.  Further, it is particularly futile for
Defendants to assert that Plaintiffs are borrowing injuries from Medicare beneficiaries, as
many of Plaintiffs' member nurses are Medicare beneficiaries themselves and consume
Medicare-reimbursed services in hospitals not meeting the RN staffing condition of
Participation.  (Pls. [s] Compl. at ¶ 46).  Plaintiffs' members suffer actual and concrete
injury due to the diminished level of care they receive as a result.[3]

Defendants also incorrectly assert that Plaintiffs, as nurses associations, are not
within the zone of interests of the Medicare Conditions of Participation.  (Defs. ['] Mot.
to Dismiss at 23-24.)  Defendants argue that the Plaintiffs are outside the zone because
the Medicare Act protects "individuals who are age 65 and over and are eligible for
retirement benefits, as well as certain disabled persons and persons suffering from end-
stage renal disease."  *Id.*  As stated above, however, a contingent of Plaintiffs' members
are registered nurses who are age 65 and older and are Medicare consumers and patients
in Medicare-reimbursed hospitals.  More importantly, Defendants' apply the zone of

---

Motion for Leave to File an Amended Complaint which if granted provides specific averments about these
events.  For purposes of reviewing Defendants' Motion to Dismiss, the court is to assume the claimed facts
are true and draw reasonable and favorable inferences therefrom to assess whether such claims support the
legal theory sufficiently to proceed.  See argument *infra* at 44.  Plaintiffs' members suffer related harm
sufficient to establish standing to proceed.

[3] Plaintiffs do not understand why Defendants make their next argument, that Plaintiffs have no "next
friend" claim with Medicare beneficiaries, because Plaintiffs' never alleged such a relationship.  Plaintiffs
need not claim a "next friend" relationship with Medicare beneficiaries because some of Plaintiffs' nurse
members are Medicare beneficiaries.  In addition, Plaintiffs show sufficient injuries to nurse members so it
is unnecessary to either "borrow" or adopt the claims of Medicare beneficiaries.

interest test too stringently, thus reaching the incorrect conclusion that Plaintiffs are excluded.  The zone of interests test is not particularly demanding and "does not require an indication of congressional purpose to benefit the would-be plaintiff." *Am. Chiropractic Ass'n, Inc. v. Leavitt*, 431 F.3d 812, 815 (2005) (*quoting Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399-400 (1987)).  Rather, the D.C. Circuit Court has stated that the question is whether Congress meant to exclude a particular class of plaintiffs from those who may sue to enforce the Act.  *Am. Chiropractic Ass'n, Inc.*, 479 U.S. at 815.

In *Am. Chiropractic Ass'n*, the circuit court found that a chiropractic association had standing to file a complaint in district court alleging that the Secretary had misinterpreted a provision of the Medicare Act regarding which providers would be reimbursed for spine manipulation. *Id.* at 815-16.  The court found that the chiropractic association had more than enough to satisfy the "less-than-demanding" zone of interest test because the interests of Medicare enrollees and the interests of chiropractors converged where the chiropractors provided a service, the enrollees received the service and Medicare reimbursed for the service.  *Id.* at 815.  Plaintiffs in the current case similarly pass the zone of interest test.  The interests of Medicare enrollees and registered nurses in Medicare-reimbursed hospitals converge where both have an interest in an adequate level of registered nurse staffing and both are injured by the Secretary's failure to ensure this safe staffing.

### ii. Plaintiffs' Members' Injury is Traceable to the Secretary's Inaction.

Plaintiffs' members' injuries from widespread and consistent understaffing of registered nurses in hospitals across the country are directly traceable to the Secretary's

failure to enforce the Conditions of Participation.  Under the Social Security Act, the

Secretary is ultimately responsible for ensuring safeguards in the process of hospital

accreditation for the Medicare program and has failed to do so.  *See* 42 U.S.C. § 1395hh

(2005) (stating that the Secretary "shall prescribe such regulations as may be necessary to

carry out the administration of the insurance programs under this title").  The Conditions

of Participation state that:

> The nursing service must have adequate numbers of licensed registered nurses,
> licensed practical (vocational) nurses, and other personnel to provide nursing care
> to all patients as needed. There must be supervisory and staff personnel for each
> department or nursing unit to ensure, when needed, the immediate availability of a
> registered nurse for bedside care of any patient.

42 C.F.R. § 482.23 (2006).

Despite this standard, however, hospitals that fail to have a sufficient number of

registered nurses, as required by the regulation above, are currently participating in

Medicare. *See* Exhibits A, B (*infra*).  This oversight can be attributed to the Secretary's

failure to adequately supervise JCAHO's role in the accreditation process.  The Medicare

Act allows that a hospital may participate in Medicare by allowing JCAHO to release its

accreditation report to CMS.  42 C.F.R. § 488.10(b)(2) (2006).  The Act further states

that those hospitals, which are accredited by JCAHO are "deemed to meet" the

Conditions of Participation, but also specifically carves out an exception in order to leave

the final authority for determining a provider's eligibility in the Secretary's hands.  The

Act states that JCAHO-accredited hospitals are not deemed to meet "any standard,

promulgated by the Secretary pursuant to paragraph (9) thereof, which is higher than the

requirements prescribed for accreditation by such Commission."  42 U.S.C. §

1395bb(a)(4) (2005).  Clearly, the Conditions of Participation regarding nurse staffing are

higher than JCAHO's standards, which make no mention of having an adequate number of registered nurses to ensure the immediate availability of a registered nurse for bedside care of any patient. The Secretary has failed to make certain that hospitals meet this higher standard; the "deemed" status of hospitals participating in Medicare is assumed by HHS, notwithstanding the higher requirements of HHS regarding nurse staffing. Among many other hospitals in the United States, JCAHO has accredited hospitals at which members of NYSNA and WSNA work and are adversely affected by the inadequate levels of RN staffing, yet these hospitals continue to receive funds from the Medicare program.

Defendants rely solely on *Linda R.S. v. Richard D. et al.*, 410 U.S. 614 (1973), in arguing that the connection between injury-inducing staffing practices and the Secretary's failure to enforce the Conditions of Participation is "speculative." Defendants' reliance is misplaced, however, as *Linda R.S.*, which involves a private citizen seeking an injunction against the allegedly discriminatory enforcement of a Texas criminal statute involving failure to pay child support, is not analogous to Plaintiffs' case. *Id.* at 614. In *Linda R.S.*, the mother of an illegitimate child, who was injured because she was not receiving child support payments from the child's father, challenged the Texas criminal statute because it only applied to parents of legitimate children. *Id.* at 614-19. The Court found that the enforcement of the statute against all parents would result in jailing the child's father, but would not necessarily result in his payment of child support – thus the nexus between the injury and the government action was "speculative." Clearly, Plaintiffs' case is different because the Plaintiffs' injury – harm to nurses, nurse members who are patients, and patients caused by unsafe registered nurse staffing levels

– would certainly be remedied by enforcement of the Conditions of Participation calling for an adequate number of registered nurses to ensure the immediate availability of a registered nurse at the bedside of any patient.  Further, the Court in *Linda R.S.* specifically stated that its decision that the plaintiff did not establish a sufficient nexus applied "in the unique context of a challenge to a criminal statute."  *Id.* at 617.

### iii. A Favorable Decision from the Court Will Likely Redress the Injury to Plaintiffs.

Plaintiffs' have set out multiple ways in which their injuries would likely be redressed by a favorable decision from the court.  Plaintiffs request a declaratory judgment that determines that the failure of HHS to assure that JCAHO imposes standards at least equivalent to the standards promulgated by the Secretary constitutes an action unlawfully withheld and results in the improper participation of hospitals in the Medicare program that do not have adequate nursing services that comply with the Conditions of Participation.  Plaintiffs also request a declaratory judgment that finds that through the failure of HHS to assure that JCAHO imposes standards at least equivalent to the standards promulgated by the Secretary while acknowledging the "deemed" status of JCAHO accredited hospitals as required by law, HHS is engaging in an unlawful *de facto* delegation of its responsibility to JCAHO.  Plaintiffs offer that the Court could redress their injuries by issuing an order of the Court to (1) set aside HHS acknowledgement of hospitals' participation in the Medicare program if their accreditation from JCAHO forms the basis for such participation; (2) requiring HHS to provide these hospitals provisional approval for participation in Medicare to ensure continuing access to health care services; and (3) requiring HHS to ensure that hospitals comply with the registered nurse staffing regulation. A favorable decision from the Court would redress Plaintiffs' injuries by

requiring HHS to establish a system to ensure that JCAHO standards are at least

equivalent to those established by the Secretary of HHS.

### b.  Plaintiffs Seek to Protect an Interest Germane to Their Purpose.

Plaintiffs establish the second requirement for associational standing because they

seek to protect an interest that is germane to their purpose.  ANA, WSNA and NYSNA

seek to protect patients and nurses' interest in adequate registered nurse staffing levels in

our nation's hospitals.  Evidence that this interest is germane to the purpose of all three

organizations is readily available on their websites.  ANA's statement of purpose includes

the following key excerpts:

> "Dedicated to ensuring that an adequate supply of highly-skilled and well-educated nurses is available, the ANA is committed to meeting the needs of nurses as well as health care consumers.  The ANA advances the nursing profession by fostering high standards of nursing practice, promoting the economic and general welfare of nurses in the workplace, projecting a positive and realistic view of nursing, and by lobbying the Congress and regulatory agencies on health care issues affecting nurses and the general public."

> "The ANA is at the forefront of policy initiatives pertaining to health care reform."

> "Through the ANA's political and legislative program, the association has taken firm positions on a range of issues including Medicare reform, patients' rights, appropriate staffing, the importance of safer needle devices, whistleblower protections for health care workers, adequate reimbursement for health care services and access to health care.  The ANA and its state nurses associations' lobbying efforts are contributing to health care reform on both state and national levels."

American Nurses Association, *Statement of Purpose*, http://www.nursingworld.org.

ANA's implementation of its mission with respect to registered nurse staffing has

included the development of ANA's *Principles for Nurse Staffing*, a comprehensive

policy statement regarding appropriate RN staffing.  Appropriate staffing has been

identified as one of ANA's five "core initiatives." Likewise, "patient safety/advocacy" is identified as another of ANA's "core initiatives." *See* http://www.nursingworld.org.

Safe staffing is also central to NYSNA's and WSNA's purpose. NYSNA's first initiative upon forming was to "elevate the standards of the nursing profession." New York State Nurses Association, *History*, http://www.nysna.org. NYSNA has historically been an advocate for the public's health. *Id.* In recent years, NYSNA's legislative agenda has focused on improving nurses' working conditions and ensuring adequate nurse staffing in hospitals. *Id.* Likewise, the purpose of WSNA is to foster high standards of nursing. Washington State Nurses Association, *Vision, Mission & Goals*, http://www.wsna.org. A core mission of WSNA is to promote "quality health care for consumers through education, advocacy, and influencing health policy." *Id.* WSNA aims to address nurses' workload issues including decreased staffing levels, increased workloads and time pressures, and longer hours of work. *Id.*

The Supreme Court has defined an interest that is "germane" to the association's purpose as one that is "central" to the association's purpose. *Hunt*, 432 U.S. at 344. Based on the passages above from ANA's, WSNA's and NYSNA's statements of purpose and their implementation through an emphasis on staffing and patients safety, it is clear that protecting patients' rights and supporting an adequate staffing level of registered nurses is central to their purpose.

### c.  Plaintiffs' Suit Does Not Require the Participation of Individual Members.

The Supreme Court has held that a lawsuit brought by an association seeking prospective or injunctive relief for its members does not normally require individual participation. *United Food and Commercial Workers Union Local 751(UFCW) v. Brown*

*Group, Inc.*, 517 U.S. 544, 546 (1996) (*citing Hunt*, 432 U.S. at 343). This element of

associational standing is a prudential requirement and focuses on administrative

convenience and efficiency, as opposed to elements of a case or controversy within the

meaning of the Constitution. *UFCW Union*, 517 U.S. at 557. Further, individual

participation is not required when the claims are "properly resolved in a group context."

*Hunt*, 432 U.S. at 344. In both *Hunt* and *UFCW Union*, the Court found that the

association and the union, respectively, had standing to bring claims on behalf of their

members for various forms of injunctive and declaratory relief. *UFCW Union*, 517 U.S.

at 546; *Hunt*, 432 U.S. at 344. Plaintiffs' case clearly falls under the prevailing legal

standard: individual participation is not required for standing where Plaintiffs seek

declaratory relief for its members. Plaintiffs ANA, WSNA and NYSNA do not seek

damages or another remedy that could possibly call into question their associational

standing. Rather, Plaintiffs seek a declaratory judgment that HHS has failed to ensure

adequate registered nurse staffing – a claim which is properly resolved in a group

context.

### III.    PLAINTIFFS' CLAIMS ARE REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT.

The Administrative Procedure Act provides for judicial review except to the

extent that "an agency action is committed to agency discretion by law." 5 U.S.C. §

701(a)(2) (2006). "Agency action" is defined to include a failure to act. 5 U.S.C. §

551(13) (2006). Under 5 U.S.C. § 706(1), a federal court may "compel agency action

unlawfully withheld or unreasonably delayed." Further, 5 U.S.C. § 706(2) provides that a

"reviewing court shall --…(2) hold unlawful and set aside agency action …found to be –

(A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with

law…"  Required agency action includes "agency regulations that have the force of law."

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  While the Court in

*Norton* limited judicial review of agency inaction to a failure to take a discrete action

mandated by statute or regulation, this case falls within the scope of such required

review.  JCAHO's accreditation, according to Congress, deems a hospital compliant with

the Medicare Act and Conditions of Participation except for the Secretary's more

demanding (e)(9) regulations.  If Defendants are not going to let JCAHO determine the

sufficiency of  its standards compared to the Secretary's higher health and safety

requirements (an unlawful delegation), then the courts must be able to review

Defendants' failure to act to enforce both the statute and its regulation.

> **a.  The Registered Nurse Staffing Standard was Promulgated Under 42 U.S.C. §1395x(e)(9)Prompting a Requirement for JCAHO Standards to be Equivalent.**

Defendants concede that there is a statutory mandate to the effect that "the

Secretary may not deem a hospital accredited" if it has passed JCAHO accreditation with

JCAHO standards that are not "at least equivalent" to the standards promulgated by the

Secretary pursuant to 42 U.S.C. § 1395x(e)(9), hereinafter referred to as "(e)(9)".  (Mot.

to Dismiss at 32-33.)  However, they argue that the regulation at issue, 42 CFR § 482.23,

was *not* promulgated pursuant to the Secretary's (e)(9) authority.  (*emphasis added*).

This argument fails, as it contradicts the history of the regulation and the numerous

statements made by HHS regarding the basis for the additional requirement of immediate

availability of RNs for bedside care.

> **i.  Regulatory History Reveals the (e)(9) Foundation for the Registered Nurse Staffing Requirement.**

The characterization of the nursing service regulation as being promulgated pursuant to the Secretary's (e)(9) authority is consistent, going back to the initial set of implementing regulations.   In 1966, the Secretary of Health, Education and Welfare published the first Conditions of Participation for the Medicare Program.   At that time, the relevant statutory sections provided that a "hospital" was one that:

> (5) provides 24 hour nursing service rendered or supervised by a registered professional nurse, and has a licensed practical or registered nurse on duty at all times;
> ….
> (8) meets such other requirements as the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services in the institution…[4]

Federal Health Insurance for the Aged, 31 Fed. Reg.13, 424 (Oct. 18, 1966).

The secretary stated in the final regulations:

> In order to participate as a hospital in the health insurance program for the aged, an institution must be a "hospital within the meaning of section 1861(e) of the Act.  This section of the law states a number of specific requirements which must be met by participating hospitals and authorizes the Secretary of Health, Education and Welfare to prescribe other requirements considered necessary in the interest of health and safety of the beneficiaries.

Id. (emphasis added).  Further, the final regulations stated that "the requirements included in the statute and those additional health and safety requirements prescribed by the Secretary are set forth in the Conditions of Participation for Hospitals."  Id. at 13,425 (emphasis added).  The specific statutory requirements are clearly distinguished from the additional regulatory requirements promulgated pursuant to the Secretary's (e)(9) authority.

In 1966, as noted above, the statutory requirement was that there be "a 24 hour nursing service rendered or supervised by a registered professional nurse,

---

[4] This is now codified as subsection (9).

and has a licensed practical nurse or registered professional nurse on duty at all

times." 42 U.S.C. § 1395x(e)(5) (1966). The 1966 Conditions of Participation

introduced the <u>additional</u> requirement that there be "supervisory and staff

personnel for each department or nursing unit to insure the immediate availability

of a registered professional nurse for bedside care of any patient when needed..."

Federal Health Insurance for the Aged, 31 Fed. Reg. 13,434 (Oct. 18, 1966).

 This regulatory standard is among several that are different from and greater than

the basic statutory prescription. Indeed, it would be possible under (e)(5) to have a 24

hour nursing service supervised by an RN, with only an LPN on duty at all times under

the statute. Or, the statute would have permitted the nursing service to have a supervisor

who was present, but otherwise engaged, and not immediately available for bedside care.

The regulatory requirement in 42 C.F.R. § 483.23 of having a registered nurse

immediately available is over-and-above the statutory minimum and can only have been

adopted pursuant to the Secretary's determination that it was one of "such other

requirements" in the interest of the health and safety of the patients, pursuant to (e)(9).

 By way of further example, in a Notice of Proposed Rulemaking, published on

December 19, 1997, HHS described the statutory foundation for the Conditions of

Participation as follows:

> Sections 1861(e) (1) through (8) of the Social Security Act (the Act)
> provide that a hospital participating in the Medicare program must meet
> certain specified requirements. Section 1861(e)(9) of the Act specifies
> that a hospital also must meet such other requirements as the Secretary
> finds necessary in the interest of the health and safety of the hospital's
> patients. Under this authority, the Secretary has established the
> requirements that a hospital must meet to participate in Medicare in
> regulations at 42 C.F.R. Part 482, Conditions of Participation for
> Hospitals.

Medicare and Medicaid Programs; Hospital Conditions of Participation; Provider

Agreements and Supplier Approval, 62 Fed.  Reg. 66,727 (Dec. 19, 1997).  Under the

HHS description quoted immediately above, the statutory requirements of (1) through (8)

are juxtaposed against all of the requirements set forth under  42 C.F.R. § 482, pursuant

to the Secretary's authority under section (e)(9).  While the proposed regulations were

never adopted, the HHS description belies the argument Defendants now make that the

nursing service standards set forth in 42 C.F.R. § 482.23 were promulgated under Section

1861(e)(5) and not under section 1861(e)(9).

The Defendants claim that the 1986 "preamble plainly states" that the nursing

standards in 42 CFR § 482.23 were developed "exclusively" under 42 U.S.C. §

1395x(e)(5) (identifying the need to provide a 24 hour nursing service) instead of (e)(9)

(identifying the need to meet the requirements that the Secretary finds necessary in the

interest of the health and safety of the patients).  (Mot. to Dismiss at 37 *citing* 51 Fed.

Reg. 22,018).  In reviewing that preamble, it is clear that Defendants are dramatically

overstating their inference, as they must be relying solely on the statement that, "We

[HHS] believe that several of the standards for the condition that implement this statutory

requirement [of Section 1861(e)(5) of the Social Security Act] are overly prescriptive,

inflexible, and, in some areas, overlapping."  Medicare and Medicaid Programs;

Conditions of Participation for Hospitals, 51 Fed. Reg. 22,018 (June 17, 1986).

Defendants fail to note that the preamble goes on to state that the "condition statement"

would be replaced by the statutory language regarding 24-hour nursing care, and that

staffing "requirements", among others, would be retained.  *Id.*  The staffing requirements

are expressly identified as distinct from the statutory condition statement and, more

importantly for this question, are identified as distinct from the (e)(5) "implementing" standards that were deleted as unnecessary.

The final regulation that follows the preamble does indeed recite the statutory requirement of (e)(5) ("The hospital must have an organized nursing service that provides 24 hour nursing services. The nursing services must be furnished or supervised by a registered nurse.") 51 Fed. Reg.22, 108. The final regulations also retain the staffing standard which is at the crux of this case, and which is over and above the statutory requirement. Given that the staffing regulation requires sufficient numbers of registered nurses to be immediately available for bedside care, it can only have been adopted under the Secretary's authority to impose additional requirements to protect the health and safety of the consumer.

Further, even if the Defendants' strained reading of the 1986 preamble reference to "implementing" (e)(5) were correct, this reference is at odds with the 1983 Notice of Proposed Rulemaking on which it is based. In the Notice, the Secretary described the Conditions of Participation as the requirements embodied in 21 Conditions, containing 126 Standards. Medicare and Medicaid Programs; Conditions of Participation for Hospitals, 48 Fed. Reg. 299 (Jan. 4, 1983). Clearly, these go beyond the eight statutory requirements and must include (e)(9) provisions. The imprecision of language used in one section of the 1986 preamble does not defeat the longstanding HHS description of the regulatory Conditions of Participation as the exercise of the Secretary's authority to impose additional requirements for hospitals pursuant to (e)(9).

Thus, contrary to Defendants' argument, the Conditions of Participation were not promulgated to implement the specific definitional subsections of 1861. In fact, the

descriptions used by the HHS Secretaries in 1966 and in 1997 suggest the opposite:  that

the specific <u>statutory statement</u> of what an institution must provide or do to be a

"hospital" is distinct from the <u>(e)(9) requirements</u> that are included in the regulatory

Conditions of Participation.  This is borne out by the fact that the regulatory RN staffing

standard in the Conditions of Participation imposes a standard that is explicitly higher

than the specific statutory standard found in 42 U.S.C. § 1395x(e)(5) (2005).

### ii.   The Requirements of 42 CFR § 482.23 Far Exceed the Statutory Requirement for Which JCAHO Accreditation Is Automatically Deemed Sufficient.

In this case, the statutory requirement was, and is, that a hospital:  "provides 24

hour nursing service rendered or supervised by a registered professional nurse, and has a

licensed practical nurse or registered professional nurse on duty at all times."  42 U.S.C.

§ 1395x(e)(5) (2005).  The (e)(9) health and safety regulation states:  "the nursing service

must have adequate numbers of licensed registered nurses, licensed practical (vocational)

nurses, and other personnel to provide nursing care to all patients as needed.  There must

be supervisory and staff personnel for each department or nursing unit to ensure, when

needed, the immediate availability of a registered nurse for bedside care of any patient."

42 C.F.R. § 482.23(b) (2006).

Going far beyond the statutory element of a 24-hour nursing service, the

regulation at issue not only requires the immediate availability of an RN, but also

requires sufficient "other personnel" to support that immediate availability of a registered

nurse for bedside care.  Too often, JCAHO accredited hospitals do without support staff

such as unit clerks or orderlies, which limits the registered nurse availability, as they must

accomplish paper work or transport of patients.  Hospital staffing plans, on which the

JCAHO standard is based, assume proper levels of tertiary support, which is frequently not the case. While a schedule for RNs may look adequate on the face of it, if RNs must transport patients or serve as the unit clerk, availability for bedside care is impaired.

Defendants cite 42 C.F.R. § 488.5(a)(3) and argue that even if the nurse staffing regulation is an (e)(9) regulation, the Secretary must identify the requirements contained therein as being higher or more precise than the requirements of accreditation after consulting with JCAHO. Defendants claim that the Secretary's failure to do so serves to defeat the regulatory test for requiring hospitals to comply with the nurse staffing standard separate from JCAHO accreditation. The argument is circular and flawed. Defendants are claiming that because they have not identified the RN staffing regulation as higher than the JCAHO standard, it cannot be higher. It is because the Secretary has failed to act to enforce his own regulations – as required by statute - that Plaintiffs have brought this suit.

Defendants call for deference to their interpretation of the regulations, when in fact, they are calling upon the Court to ignore their inaction in the face of a statutory mandate. It is the law: hospitals may not participate in the Medicare program if they do not meet the (e)(9) health and safety standards that are higher than the accrediting body's standards. The HHS regulation states that even if the regulations are "more precise" than the JCAHO standards, accreditation will not be deemed to meet the Conditions of Participation. 42 C.F.R. § 488.5(a) (2006). HHS' failure to act through its on-going avoidance of identifying and enforcing the higher regulations is what prompted this lawsuit. The Defendants *post hoc* interpretation of its regulations is not entitled to deference when, as here, it is clearly inaccurate. In any event, a court is to defer to an

agency's interpretation of its rule only "if the meaning of the words used is in doubt."

*Pfizer, Inc. v. Heckler,* 735 F. 2d 1502, 1509 (D.C. Cir. 1984) (*citing Udall v. Tallman*,

380 U.S. 1, 16 (1945)).  Here, the higher level of staffing required by 42 C.F.R. §

482.23(b) makes clear that it is a health and safety provision with which a hospital must

demonstrate compliance if the JCAHO standard is not at least equivalent.  Defendants

cannot be excused because they have not consulted with JCAHO and identified the

problem.

### iii.  The JCAHO Standards are Lower Than Those Set by the Secretary.

One need not look any further than JCAHO's own standards to see that they are

lower than the HHS standard for registered nurse staffing.  The JCAHO standards include

nothing about RN staffing.  JCAHO's nursing standards provide:

> NR.1.10.   A nurse executive directs the hospital's nursing services.
>
> NR.2.10.   The nurse executive is a licensed professional registered nurse qualified by advanced education and management experience.
>
> NR.3.10.   The nurse executive establishes nursing policies and procedures, nursing standards of patient care, treatment, and services, standards of nursing practice and a nurse staffing plan(s).

JCAHO, *Comprehensive Accreditation Manual for Hospitals:  The Official*

*Handbook* at NR-2 (2006).  The elements of performance for JCAHO standard 3.10

regarding a hospital's nurse staffing plan are as follows:

> 1. The nurse executive, registered nurses, and other designated nursing staff members write nursing policies and procedures; nursing standards of patient care, treatment and services; standards of nursing practice; a nurse staffing plan(s); and standards to measure, assess, and improve patient outcomes.

2. The nurse executive is responsible for ensuring that nursing policies, procedures, and standards describe and guide how the nursing staff provides the nursing care, treatment, and services required by all patients and patient populations served by the hospital and as defined in the hospital's plan(s) for providing nursing care, treatment, and services.

3. All nursing policies, procedures, and standards are defined, documented, and accessible to the nursing staff in written or electronic format.

4. The nurse executive or a designee(s) exercises final authority over those associated with providing nursing care, treatment, and services.

JCAHO, *Comprehensive Accreditation Manual for Hospitals: The Official Handbook* at NR-8 (2006). While there is a requirement for a nurse staffing plan, there is nothing specific about registered nurses, (as distinct from other nursing staff), and there is no requirement concerning the immediate availability of a registered nurse to render bedside care to the patients. Instead, the JCAHO standards focus only on the role of the nurse executive and his or her adoption of policies, procedures and plans. The JCAHO standards is process-oriented and not content-based, i.e., it is, as JCAHO touts, non-prescriptive. Because the JCAHO nursing standards do not specify the nature of the staffing plans for registered nurses that are required of accredited hospitals, these JCAHO standards are not equivalent to the HHS standard, which calls for staffing plans that "ensure, when needed, the immediate availability of a registered nurse for bedside care of any patient." 42 C.F.R. § 482.23 (2006).

The deficiency in the JCAHO nursing standard is not remedied in JCAHO's general human resource standards, which state:

HR.1.10. The hospital provides an adequate number and mix of staff that are consistent with the hospital's staffing plan.

HR.1.20. The hospital has a process to ensure that a person's qualifications are consistent with his or her job responsibilities.

> HR.1.30.  The hospital uses data from clinical/service screening indicators
> and human resource screening indicators to assess and continuously
> improve staffing effectiveness.

JCAHO, *Comprehensive Accreditation Manual for Hospitals:  The Official Handbook* at HR-2 (2006) (*emphasis added*).  The starting point for this standard is the hospital's own staffing plan, not the regulatory requirement set by HHS.  The JCAHO Element of Performance for HR. 1.10 is that "The hospital has an adequate number and mix of staff to meet the care, treatment, and service needs of the patients."  JCAHO, *Comprehensive Accreditation Manual for Hospitals:  The Official Handbook* at p. HR-7 (2006).  The failure of this standard to prompt adequate RN staffing is evident from the numerous JCAHO accredited hospitals that have abysmal RN staffing levels with the resulting lack of immediate RN availability.

The element of performance for Standard 1.30 for testing the adequacy of staffing plans permits a hospital to bypass RN-specific data, through allowing data review of, "[a]ll nursing staff (including registered nurses, licensed practical nurses, and nursing assistants or aides)…," leaving to hospitals the discretion on stratification of data by discipline.  JCAHO, *Comprehensive Accreditation Manual for Hospitals:  The Official Handbook* at NR-8 (2006).  Thus, specific information about RN staffing can easily go undetected.  Further, the JCAHO standard for Human Resources staffing does not result in adequate registered nurse staffing, as it is applicable to all staff, and the self-assessment tools do not ensure compliance with the HHS nursing standard for registered nurse availability.  *See* 42 C.F.R. § 482.23(b) (2006).  Accordingly, the JCAHO standard is a lower standard – or certainly a much less precise standard - than the Conditions of Participation.

While Defendants argue that the JCAHO standards are equivalent to the HHS standards for registered nurse staffing, it is clear to those who work in the field that this it not the case, and Plaintiffs oppose dismissal so that they can develop a full record. For example, while the analysis is not dispositive, one leading healthcare consulting firm has evaluated the JCAHO and CMS [HHS] standards for nursing services and has concluded that they are different. *See* Exhibit B: Cheryl A. Niespodziani, *The CMS-JCAHO Crosswalk: A Side-by-Side Analysis of the CMS Conditions of Participation and JCAHO Standards* (HCPro, Inc. 2006). This analysis offers a side-by-side comparison of the CMS Conditions of Participation and the JCAHO standards regarding nursing services. *Id.* at 34-39. The analysis states that while CMS focuses specifically on nursing staffing and competencies, JCAHO standards encompass staffing and competencies throughout the entire organization. *Id.* at 36. JCAHO does not have standards in the Nursing chapter that address staffing and competency, but rather includes these topics in the Human Resources chapter. *Id.* The analysis also states that regarding care plans, CMS focuses on the nursing part of the care plan where JCAHO's focus is more general, requiring that the individual's care plan be done collaboratively and in a timely manner with all disciplines. *Id.* [5]

> **b. The Enforcement of the (e)(9) Health and Safety Nurse Staffing Regulation is Mandatory and Not Committed to Agency Discretion by Law.**

The Supreme Court has stated that an agency's decision not to take enforcement action is presumed to be non-reviewable by the courts under 5 U.S.C. § 701(a)(2) as

---

[5] As noted elsewhere in this Opposition, Plaintiffs' references that support their factual claims are not intended as a substitute for the evidence that they will present at the close of discovery, but rather, is offered to rebut Defendants' claim that the Court should dismiss the case because of their contention that JCAHO standards are equivalent to the CMS standard.

being "committed to agency discretion."  *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

However, the presumption is rebuttable, and this case provides multiple bases for

rebutting that presumption.

### i. The Statute Provides Substantive Guidelines for the Secretary to Apply.

Congress was clear and explicit with respect to the effect of accreditation.  It

stated that accreditation by the Joint Commission on Accreditation of Hospitals will

provide the basis for a hospital to:

> be deemed to meet the requirements of the numbered paragraphs of
> section 1861(e) [42 U.S.C. §1395x(e)]; except –
> (3) paragraph (3) thereof, and
> (4) any standard, promulgated pursuant to paragraph (9) thereof, which is
> higher than the requirements prescribed for accreditation by such
> Commission.

42 U.S.C. § 1395bb(a) (2005).  There is no statutory ambiguity here.  Congress wanted

the accreditation process to take the place of HHS review, <u>except</u> with respect to

compliance with the (e)(9) health and safety requirements, of which the registered nurse

staffing requirement  is one.  The "deemed to meet" language simply does not apply

when the requirements for accreditation are not equivalent to the health and safety

requirements.

In *Heckler,* the Court cited *Dunlop v. Bachowski*, 421 U.S. 560 (1975) as a case

that was decided on somewhat different grounds, but which was consistent with the

Court's newly described presumption of unreviewability of a decision not to initiate an

enforcement action.  In that case, the statutory language was quoted as, "[t]he Secretary

shall investigate such complaint, and if he finds probable cause to believe that a violation

…has occurred…he shall…bring a civil action . . . ."  *Heckler*, 470 U.S. at 833.  In

*Dunlop*, the Court determined that the Labor Management Reporting and Disclosure Act (LMRDA) provided sufficient statutory guidance to provide the basis for judicial review of the Secretary's determination not to file a suit. The Court in *Heckler* noted that there were "'clearly defined' factors" that would prompt the Secretary of Labor's filing of a lawsuit. *Heckler*, 470 U.S. at 834.

Thus, the Court in *Heckler* determined that the finding of "probable cause to believe that a violation has occurred" constituted sufficient statutory guidance to take the matter out of agency discretion. This LMRDA language is directly analogous to the language in the Social Security Act: if the JCAHO standard is not equivalent to an (e)(9) regulatory requirement, JCAHO accreditation shall not make a hospital "deemed" to meet the requirements of Section 1861 for purposes of Medicare Participation. Note that in *Dunlop*, the Secretary of Labor had determined that the election violations that he had found would not have affected the outcome of the election. This agency determination did not deprive the court of the right to review the Secretary's decision under the Administrative Procedures Act (APA), because, as the Court stated in *Heckler,* "The statute being administered quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power." *Id.* at 834. The "except" clause in 42 U.S.C. § 1395bb(a) also withdraws discretion from the Secretary, since the HHS registered nurse staffing standard is higher than the JCAHO standards.

### ii. Defendants May Not Delegate Enforcement.

The wholesale failure of Defendants to demand compliance with the RN staffing requirement, as required by statute, results in a de facto delegation to JCAHO, to both set the standard and determine compliance with the Conditions of Participation. It is well

settled that a federal agency may not delegate to a private entity the agency's statutory

obligations.[6]  "[T]he case law strongly suggests that subdelegations to outside parties are

assumed to be improper absent an affirmative showing of congressional authorization.

*See Shook v. D.C. Fin. Responsibility and Management Assistance Auth.*, 132 F.3d 775,

783-84, n.6 (D.C. Cir. 1998). *See also Nat'l Ass'n of Regulatory Utility  Comm'r  v. Fed.*

*Communications Comm'n*, 737 F.2d 1095, 1143-44, n.41 (D.C. Cir. 1984); *Nat'l Park*

*and Conservation Ass'n v. Stanton*, 54 F.Supp.2d 7, 18-20 (D.D.C. 1999).  The courts

have determined that an agency may not permit a private sector organization to perform

the agency's duties if it is clear that Congress did not intend to permit the agency to

delegate the duties.  *U. S.  v. Widdowson,* 916 F.2d 587, 592 (10th Cir. 1990) (*citing U. S.*

*v. Giordano*, 416 U.S. 505 (1974)).  This is particularly important point when the

organization to which the duty is delegated has a conflict of interest.  *See Sierra Club v.*

*Sigler*, 695 F.2d 957, 962 (5th Cir. 1983) (court in dictum stated that private consulting

firm with a conflict of interest should not prepare environmental impact statement that is

not given a truly independent review by the EPA).

In the case at bar, it is the Secretary's duty to preclude participation in the

Medicare program when standards used by JCAHO are not at least equivalent to the HHS

standard.  There is nothing in the law that suggests that the Secretary could leave it to

JCAHO to determine whether its standards are at least equivalent to the HHS standard.

Indeed, one assumes that that JCAHO wants to have standards that are equivalent to the

Conditions of Participation and would not identify lower standards that would adversely

affect its deeming authority.  The net effect of defendants' failure to identify the lack of

---

[6] The legal doctrine is occasionally referred to as the doctrine of unlawful subdelegation, because the Congress originally delegates to the agency, "and the delegation from the agency to a third party is deemed a subdelegation."  *National Park and Conservation Ass'n,* 54 Supp. 2d at 32 n.5.

equivalency between the JCAHO standards and the HHS registered nurse staffing standard is the unspoken and unlawful delegation of HHS' review authority regarding standards equivalency.  General statements that the HHS retains ultimate authority or has a regulation that identifies its ability to declare JCAHO standards to be less exacting does not override the reality of the unlawful delegation.  *See Nat'l Park and Conservation Ass'n,* 54 Supp. 2d at 38 -39 (court rejects defendants' argument that they retain "supervisory power" and "ultimate accountability and authority" and therefore have not unlawfully delegated their responsibility to manage a nationally protected scenic river).

### iii.  "Agency Discretion" Does Not Permit Abdication of Responsibility.

Finally, the Supreme Court has also recognized that  "committed to agency discretion" may not include a situation, as Plaintiffs identify in this case, where an agency has "consciously and expressly adopted a general policy" that amounts "to an abdication of its statutory responsibilities."  *Id.* at 833 n.4.  HHS has recognized that it lacks a system for ensuring compliance with the Conditions of Participation, but has not corrected it.  In its Fiscal Year 2005, "CMS Financial Report" Defendant wrote: "Additionally, we will explore regulatory changes to implement the statutory requirement to deny deemed status where CMS requirements are higher than requirements prescribed for accreditation by JCAHO."  U.S. Dep't of Health and Human Services, CMS Financial Report 126 (2005).  Plaintiffs are unaware of, and Defendants have not cited, any such regulatory change.

### iv.  The Survey Options Do Not Deprive This Court of Jurisdiction.

Defendants suggest that the Secretary already has a system in place to address the lower JCAHO standards, but this it not so. Defendants argue that the "sample based" and "allegation driven" surveys authorized by 42 U.S.C. § 1395aa(c) provide the basis for HHS to correct registered nurse staffing deficiencies. The fact that HHS may come behind JCAHO and find deficiencies does not correct the fundamental legal problem complained of in this lawsuit – that the law prohibits HHS from recognizing JCAHO accredited hospitals from being deemed to meet the Conditions of Participation when HHS standards are higher. Plaintiffs understand that HHS has the authority to find hospitals out of compliance, notwithstanding their accredited status, when deficiencies are identified. 42 U.S.C. § 1395bb(d). Defendants' statement that the "deemed" status has always been viewed as provisional approval to receive Medicare payments because of the ability to disqualify a hospital misses the point. The after-the-fact look is not what Congress intended when it unequivocally stated that the hospital was not to be deemed to meet the Conditions of Participation at the outset, if the JCAHO standards were lower than the (e)(9) requirements.

If one were to ignore statutory language regarding the exception to the "deemed" to meet status of JCAHO accredited hospitals and rely solely on the "sample based" and "allegation driven" surveys, compliance levels would not be assured. The U.S. Government Accountability Office (GAO) reviewed the state agencies' validation study material for fiscal years 2000 through 2002 and found that "JCAHO did not identify three-quarters of the hospitals that state survey agencies found to have serious deficiencies" and "JCAHO did not detect two-thirds of the serious deficiencies identified by state survey agencies." *Medicare: CMS Needs Additional Authority To Adequately*

*Oversee Patient Safety In Hospitals*, GAO-04-850 at 11-12 (2004).  Changes made by JCAHO in its procedures since the GAO report have not been shown to be more effective in identifying hospitals' failure to meet the Conditions of Participation.

The "periodic survey" by state agencies is more geared toward enforcement of the HHS Conditions of Participation than is the JCAHO survey.  For example, "document review focuses on a facility's compliance with the CoP."  (Defs. ['] Ex. A at 18.)  The Condition of Participation for registered nurse staffing is referenced in and appended as a part of the State Operations Manual protocol for review of hospital compliance with the Conditions of Participation.  (Defs. ['] Ex. A at 1; Attach. to Defs. [s] Ex. A).   Further, state agencies are to use the interpretive guidelines and other CMS policy statements, and staffing documents are to be reviewed to determine if "adequate numbers of staff are provided according to the number and acuity of patients."  (Defs. ['] Ex. A at 18.)

The JCAHO process described in Defs. ['] Ex. B requires, as of January 1, 2006, hospitals to use the Priority Focus Process and the Periodic Performance review.[7]  The review and survey methodologies described in Exhibit B and described above do not focus on registered nurse staffing in the way the state survey protocol does,[8] nor in the

---

[7] By responding to Defendants' attachments, Plaintiffs do not intend to ask this court to decide the motion to dismiss based upon extrinsic evidence.  If the court intends to treat Defendants' motion under Fed. R. Civ. P. 56, Plaintiffs move to be granted permission to engage in discovery prior to adjudication.  The issues raised in this case are complex, and the mere statement of a process in a JCAHO publication should not be the final word.  Plaintiffs plan to engage in vigorous discovery regarding the JCAHO accreditation process to ultimately assist the Court in assessing the Plaintiffs' claims.  As stated below, Plaintiffs need not prove their facts in response to a motion to dismiss, but rather, need to point out the manner in which they could prevail if the facts claimed are proven.

[8] Defendants' claim that Plaintiff needs to claim or prove that hospitals that participate in the Medicare Program based upon the results of a periodic survey by a state agency, instead of JCAHO accreditation, have better registered nurse staffing creates a red herring.  The information from Plaintiffs' members regarding non-compliance with the RN condition of Participation arises in the context of JCAHO accredited hospitals, thereby prompting this case.  Whether or not the non-JCAHO accredited hospitals have staffing problems is not determinative to whether the Defendants are failing to act as required by the statute and HHS regulations with respect to JCAHO-accredited hospitals.

way the Conditions of Participation would suggest as necessary to be equivalent. Lastly, with respect to the use of period surveys, Plaintiffs acknowledge that registered nurse staffing in psychiatric hospitals falls outside of the JCAHO "deeming" authority, and regrets any confusion or inconvenience to the court regarding that aspect of the Medicare program.

### IV.    THE ENFORCEMENT SCHEME DOES NOT PRECLUDE A PRIVATE CAUSE OF ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT.

Defendants' erroneously rely on *Block v. Cmty. Nutrition Inst.* to conclude that Plaintiffs' claims are barred because of statutory preclusion of judicial review. 467 U.S. 340 (1984); Defs. ['] Mot. to Dismiss at 33-35. *Block* is inapplicable, however, for multiple reasons. First, statutory preclusion of judicial review is a statute-specific inquiry, and *Block* involved the Agricultural Marketing Agreement Act of 1937, not the Social Security Act. *See Block*, 467 U.S. at 341. Second, in *Block*, the Court cited the fact that consumers were excluded from pursuing administrative remedies under the Agricultural Marketing Agreement Act as evidence that Congress did not intend for consumers to have judicial review either. *Id.* at 347. Under the Medicare Act, however, consumers of Medicare may avail themselves of administrative remedies. *See, e.g.,* 42 C.F.R. § 405.801 (2006) (describing when a beneficiary may appeal a Medicare carrier's determination for payment for Part B benefits).

Moreover, the Court has specifically addressed the issue of statutory preclusion of judicial review in the context of the Medicare Act, thus those cases more aptly apply. While most claims arising under the Medicare Act must first exhaust the administrative process before proceeding to district court, *Nat'l Athletic Trainers' Ass'n, Inc. v. U.S.*

*Dep't of Health and Human Serv., et al.,* 394 F. Supp. 2d 883, 893 (N.D. Tex. 2005), the

Supreme Court has recognized an exception to this rule.  In *Bowen v. Michigan Acad. of*

*Family Physicians*, the Court held that neither 42 U.S.C. § 1395ff nor § 1395ii barred

judicial review of Medicare Part B regulations.  *Id.*  The Court drew the distinction that §

1395ff(b), which authorizes administrative and judicial review of benefit determinations,

does not address challenges as to the *method* by which these benefit determinations are

made.  *Id.* (*emphasis added*).  In addition, § 1395ii, which states that 42 U.S.C. § 405(h)

is applicable to the Medicare program, does not preclude judicial review as the legislative

history reveals "Congress' intent to foreclose review only of 'amount determinations,'

not of substantial statutory and constitutional challenges to the Secretary's administration

of Part B."  *Id.*

The Court's recent clarification of the *Michigan Academy* exception, in *Shalala*

*v. Illinois Council on Long Term Care, Inc.,* does not limit its effect with respect to

Plaintiffs' case.  529 U.S. 1, 5 (2000).  In *Illinois Council*, nursing homes objected to

regulations which imposed sanctions on those homes who had deficiencies, as found by

an inspector, which could jeopardize their ability to receive payment under Part A for

certain beneficiaries.  *Id.* at 6.  The Court found that the jurisdictional bar applied even

though the suit was challenging the agency's *procedure* and was requesting a declaration

of invalidity, as opposed to the direction of payment.  *Illinois Council*, 529 U.S. at 12

(*emphasis added*) (*citing Heckler v. Ringer*, 466 U.S. 602 (1984), in which it held that

§405(h) barred jurisdiction to a suit brought by plaintiffs challenging the lawfulness of

the agency's decision not to provide reimbursement under Part A for a particular medical

operation).  The Court explained that "§ 1395ii does not apply § 405(h) where application

of § 405(h) would not simply channel review through the agency, but would mean no

review at all." *Id.* at 19.

    Plaintiffs' case clearly differs from *Illinois Council* and falls under the *Michigan*

*Academy* exception where application of § 405(h) would mean no review at all.  The fact

that HHS and CMS are failing to enforce the Medicare Conditions of Participation

regarding registered nurse staffing levels cannot be addressed in the Medicare

administrative review process because this process is designed only to review payment

determinations.  42 C.F.R. § 405.801 (2006).  As a result, Plaintiffs can obtain review

only in a federal question suit.  In addition, unlike in *Illinois Council*, Plaintiffs will not

later seek money or some other benefit from HHS or CMS; in fact, their claim has

nothing to do with payments or methods of payments for Medicare benefits.  Plaintiffs

have no other agenda than to compel HHS and CMS to enforce their regulations, and a

bar to federal review would mean no review at all.[9]

---

[9] The Court of Appeals for the District of Columbia recently addressed this issue, in *Am. Chiropractic Ass'n v. Shalala*, reasoning that the crucial question was "whether the Association could get its claims heard administratively and whether it could receive judicial review after administrative channeling."  369 U.S. App. D.C. at 816.  The court found that the association could get administrative review for both remaining claims which alleged (1) that the Secretary illegally allowed HMOs to require, as a condition of coverage, that the enrollee obtain a referral from a medical doctor for a chiropractic procedure and (2) that the Secretary misinterpreted the Medicare Act to allow medical doctors, osteopaths and chiropractors to perform the corrective procedure.  *Id.* at 816-17.  As a result, the court found that the district court did not have jurisdiction.  *Id.* at 814.  Clearly, Plaintiffs' case differs from *Am. Chiropractic Ass'n* as Plaintiffs' claims could not become the subject of an administrative proceeding.  With respect to the first claim in *Am. Chiropractic Ass'n*, the court reasoned that the issue could be decided in the course of a payment claim review because an enrollee could obtain a chiropractor's services without first getting a referral, submit this claim to his HMO, and then file a grievance with the HMO after the HMO denied the claim based on the enrollee's failure to obtain a referral.  *Id.* Plaintiffs' claims, however, are not even remotely related to reimbursement, conditions of payment, or covered services under Medicare HMOs, thus Plaintiffs' claims could not be addressed in a payment review hearing.  With respect to the second claim in *Am. Chiropractic Ass'n*, the court also found that this issue could become the subject of a payment claim if an enrollee obtained services from a chiropractor, the chiropractor attempted to get payment from a Medicare HMO, and the HMO denied payment stating that it had adopted a rule that only medical doctors and osteopaths could provide spine manipulation.  *Id.* at 817.  In this case, the chiropractor could file an administrative claim arguing that the HMO must reimburse him.  *Id.*  Again, because Plaintiffs are not challenging a reimbursement issue, nor regulations governing a reimbursement issue, Plaintiffs' claims could not be channeled, as in *Am. Chiropractic Ass'n*, through administrative review, and federal jurisdiction is proper.

## V.  PLAINTIFFS' CHALLENGES TO THE SECRETARY'S ENFORCEMENT HAVE MERIT AND SHOULD BE ADJUDICATED AFTER DISCOVERY AT TRIAL.

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants' Motion to Dismiss is based upon two grounds.  With respect to the allegation that the complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of Plaintiffs.  Dismissal is inappropriate unless it appears beyond doubt that the Plaintiffs can prove no set of facts that would entitle them to relief.  *See Raila v. U. S.,* 355 F.3d 118 (2d Cir. 2004) (*citing Sec. Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 68 (2d Cir. 2000)).  The district court must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs.  *See Royal v. Leading Edge Prods., Inc*., 833 F.2d 1, 1 (1st Cir. 1987).  The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits.  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Moore v. Bd. of Educ. of Chicago*, 300 F. Supp. 2d 641 (N.D. Ill. 2004).  In the instant case, as described above, the court has federal question jurisdiction, and the arguments that Defendants make regarding the application of Administrative Procedure Act are not supported by the law.

The Defendants have also filed their Motion to Dismiss pursuant to Rule 12(b)(6).

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992).  A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief.  *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429-30 (7th Cir. 1996).

Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint. *Dioguardi v. Durning,* 139 F.2d 774 (2d Cir. 1944).  If a complaint's factual allegations, and the reasonable inferences derived from them, would support a legal theory entitling the plaintiff to some relief, a Rule 12(b)(6) motion should be denied.  *Wells v. U.S.,* 851 F.2d 1471, 1473 (D.C. Cir. 1988), *cert. denied,* 488 U.S. 1029 (1989).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," *Neitzke v. Williams,* 490 U.S. 319, 327 (1988), or, we add, a judge's belief that the plaintiff cannot prove what the complaint asserts. *See ACLU Found. of S. California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991).

## **CONCLUSION**

Plaintiffs, for the aforementioned reasons, respectfully request that Defendants'

motion to dismiss be **DENIED**.

Respectfully submitted,

/s/

_____

Alice L. Bodley
General Counsel
D.C. Bar #939009

Jocelyn Winston
D.C. Bar #434639
Matthew Seiler
D.C. Bar #490767
Catherine Hodgetts
American Nurses Association
8515 Georgia Avenue
Suite 400
Silver Spring, MD 20910
301-628-5127

### <u>Certificate of Service</u>

I hereby certify that, this __<sup>th</sup> day of November, 2006, I caused copies of

Plaintiffs' Opposition to Defendants' Motion to Dismiss and Points and Authorities in

support thereof and accompanying proposed Order to be filed electronically with the

Clerk of the Court using the Electronic Case Filing system which constitutes service on

the following:


DANIEL MERON                          PETER D. KEISLER
General Counsel                       Assistant Attorney General

KATHLEEN H. MCGUAN                    KENNETH L. WAINSTEIN
Associate General Counsel             United States Attorney

MARK D. POLSTON                       SHEILA M. LEIBER
Deputy Associate General Counsel      PETER ROBBINS
                                      Department of Justice
TRACY GLOVER                          20 Massachusetts Avenue, NW
Attorney                              Room 7142
Department of Health and Human Services   Washington, D.C. 20530


                              /s/
                              _____
                              Alice L. Bodley
                              General Counsel
                              D.C. Bar #939009
                              American Nurses Association
                              8515 Georgia Avenue
                              Suite 400
                              Silver Spring, MD 20910
                              301-628-5127
                              Attorney for Plaintiffs